**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE**

ERVIN SHROCK,

        Plaintiff,

        v.

DRUG PLASTICS AND GLASS
COMPANY, INC.,

        Defendant.

CAUSE NO.: 4:17-CV-53-TLS

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 31], which is fully briefed and ripe for ruling. For the reasons set forth below, the Court GRANTS the Defendant's motion.

**PROCEDURAL BACKGROUND**

The Plaintiff Ervin Shrock filed an Amended Complaint [ECF No. 5] against the Defendant Drug Plastics and Glass Company, Inc., bringing claims under the Age Discrimination in Employment Act (ADEA) and the Family Medical Leave Act (FMLA). The Defendant now seeks summary judgment in its favor on all claims. In response, the Plaintiff abandons his ADEA claims. Therefore, the Court grants summary judgment in favor of the Defendant on the Plaintiff's ADEA claims and considers the instant motion solely as to the Plaintiff's FMLA claims.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an

absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

### A.    The Plaintiff's Employment

The Defendant is a worldwide manufacturer of plastic packaging for healthcare products. Def. Ex. 1, ¶ 3, ECF No. 32-1. The Defendant hired the Plaintiff on August 25, 2008, to work at its Oxford, Indiana facility. Def. Ex. 2, 22:16–25, ECF No. 32-2. In his position as a material handler, the Plaintiff handled resins and colorants in the manufacturing process. *Id.* at 23:1–3, 28:13–20. The Defendant operates three shifts, and the Plaintiff was the sole material handler on the second shift. *Id.* at 29:24–30:9, 52:20–22, 107:23–108:2. Material handlers must complete documentation so that the Defendant can trace orders and ensure accuracy, and the Plaintiff knew that completing accurate documentation was an important part of his job. *Id.* at

2

27:20–28:23, 30:10–12. He testified that inaccurate information could have a devastating impact because bottles made with the wrong material would have to be scrapped. *Id.* at 51:17–24.

**B.      The Plaintiff's FMLA Leave for His Wife's Gallbladder Surgery in August 2015**

The Plaintiff learned of the Defendant's FMLA leave policy from paperwork at his facility, and the Defendant informed the Plaintiff that it uses AIG as its third-party FMLA administrator. *Id.* at 33:7–10, 35:8–11; *see also* Def. Ex. 4, ECF No. 32-4; Ex. 5, ECF No. 32-5. The Plaintiff's wife had gallbladder removal surgery on August 16, 2017, and the Plaintiff requested FMLA leave to care for her. *Id.* at 35:20–36:4, 131:1–21; Def. Ex. 3, ECF No. 32-3. The Plaintiff's portion of his FMLA certification, signed on August 11, 2015, indicates that his first day off work would be August 17, 2015, and that he would return to work August 21, 2015. Def. Ex. 3, at 1, 4. The physician's portion of the certification, signed on August 24, 2015, provides that the Plaintiff's wife would be incapacitated from August 16 through August 26, 2015, and that her condition did not require an intermittent schedule for the Plaintiff. *Id.* at 5, 6.

**C.      The Plaintiff's Attempted Request for FMLA Leave Related to His Wife's Vertigo**

Following her gallbladder surgery in August 2015, the Plaintiff's wife began to experience vertigo. Def. Ex. 2, at 128:9–129:1, 140:18–141:1. The Plaintiff spoke with Jennifer Lanie, who at the time was both Plant Secretary and the Plaintiff's supervisor, to notify her of his need to take FMLA leave. *Id.* at 30:13–22; 34:11–35:4, 141:23–142:11. With Lanie's assistance, the Plaintiff filled out new FMLA certification paperwork related to his wife's vertigo, and his signature on this certification is dated August 31, 2015. *Id.* at 71:17–72:18, 126:11–128:2, 131:22–132:22; Def. Ex. 6, ECF No. 32-6. The section of the certification to be completed by the health care provider is blank. Def. Ex. 6. The Plaintiff testified that he thought this FMLA paperwork was faxed in May 2016 to "FMLA," a reference to AIG, and he testified that he did

not remember if he ever gave the certification related to his wife's vertigo to Larissa Budreau, the Defendant's Plant Secretary, in May 2016. Def. Ex. 2, at 73:19–74:10.

At his deposition, the Plaintiff was asked: "Between August and your termination, did you attempt to take or did you miss any time that you reported to [the Defendant] that you were taking for FMLA, for intermittent FMLA, to care for your wife?" *Id.* at 138:22–25. The Plaintiff responded, "That, I think I did." *Id.* at 139:1. He was then asked, "So if you had done that, what steps would have you taken? Like, if you were going to miss a day to take your wife to the doctor's office, for instance, how would you have conveyed that to [the Defendant]?" *Id.* at 139:2–6. He responded, "I would have called in to the front office, to the secretary, HR, whoever is in there." *Id.* at 139:7–8. He was asked, "And what would you have said?" *Id.* at 139:9. He responded, "And told them that I was needing to take an FMLA day." *Id.* at 139:10–11. He testified that he did that a "[c]ouple times." *Id.* at 139:14–16. When asked when he gave that notification, he responded, "From – in May I think there was two, three times." *Id.* at 139:18–19.

**D.    The Plaintiff's Verbal and Written Warnings for Falsification of Forms in March and April 2016**

On March 14, 2016, the Plaintiff received a verbal warning for "Falsifying Documentation–Material Shift Summary Report." Def. Ex. 7, ECF No. 32-7; *see also* Def. Ex. 2, 50:6–52:10. In the "Supervisor's Comments" section of the Disciplinary Discussion Report, Lanie, as the Plaintiff's supervisor, commented:

> The Material Shift Summary Report-Line Verification form is designed to verify the lines are checked and properly connected. Had Ervin properly checked his lines, he would have seen a probe for M#17 (tagged) was in LR#2 and there was a probe (tagged) for M#17 on LR#1. Had he verified those lines, he would have caught this and we would not have lost production or material. It is advised that each Material Handler begin using forms for what they are designed for and to properly start checking lines as soon as you start your shift. Ervin told me on March 10, 2016 that he does not check the lines, therefore, falsifying documentation.

4

Def. Ex. 7. The Plaintiff refused to sign the acknowledgement on the form, but he does not dispute that his documentation was inaccurate. *See id.*; Def. Ex. 2, at 50:22–51:8, 52:11–19.

On April 14, 2016, the Plaintiff received a written warning from Lanie for "Falsifying Documentation–Railcar Usage Form." Def. Ex. 8, ECF No. 3-8; *see also* Def. Ex. 2, at 46:3–47:10, 48:1–16. The Disciplinary Discussion Report explains that the Plaintiff incorrectly documented which lot he was unloading from a railcar into a silo. Def. Ex. 2, at 46:17–21; Def. Ex. 8. The Plaintiff testified that he had confused two rail cars when hooking up the hoses, which resulted in the inaccurate documentation. Def. Ex. 2, at 48:3–11. The Plaintiff admitted that he made the error but refused to sign the acknowledgement. *Id.* at 48:17–24; Def. Ex. 8.

When shown the two Disciplinary Discussion Reports, the Plaintiff testified that he never intentionally falsified any documentation related to his employment with the Defendant. *Id.* at 136:13–17. Until March 14, 2016, the Plaintiff only had one documented incident of discipline, which was in 2008 shortly after he was hired. *Id*. at 31:14–32:12. At his deposition, the Plaintiff testified generally that another material handler, Efron Rodriguez, made a mistake in his paperwork, but the Plaintiff did not know if he was disciplined. *Id.* at 137:6–138:1.

E.    **May 2016 Unpaid Suspension for Attendance Violations**

On May 2, 2016, Lanie gave the Plaintiff a one-week unpaid suspension for violating the Attendance Policy when he missed six days of work in a six-month period. Def. Ex. 9, ECF No. 32-9; *see also* Def. Ex. 2, at 57:24–58:20, 59:17–19. The missed days were November 4, 6, and 16, 2015; January 15, 2016; and April 18 and 19, 2016. Def. Ex. 9. At his deposition, the Plaintiff was unwilling to agree that he had six occurrences under the attendance policy because the document is difficult to read and because he did not know if he had taken vacation days. Def. Ex. 2, at 59:20–60:5. After receiving the suspension, the Plaintiff attempted to review his

attendance record to determine whether any days were covered by FMLA leave and if the number of days was correct. *Id.* at 62:14–21. The Plaintiff believed that he had FMLA leave to cover his absences. *Id.* at 61:23–25. The Plaintiff did not keep any personal record of his attendance. *Id.* at 61:21–23.

## F.      The Plaintiff's Attempt to Use FMLA Leave for Absences

The Plaintiff alleges in the Amended Complaint that, after his May 2016 suspension, he contacted AIG to request FMLA leave for some of his unexcused absences. Amended Compl. ¶ 22, ECF No. 5. The Plaintiff testified that, when he contacted AIG, he spoke with an unidentified female employee who informed him that the Defendant had approved his FMLA leave. Def. Ex. 2, at 62:25–63:18, 65:2–66:4, 68:13–19. Shortly thereafter, the Plaintiff was absent on May 12, 2016, to take his wife to an appointment with Dr. Scott Sanders, her balance doctor. *Id.* at 66:9–12, 84:7–13, 85:4–8. The Plaintiff contacted Budreau, the Defendant's Plant Secretary, and informed her that he was taking FMLA leave to cover the absence. Def. Ex. 10, at ¶ 6, ECF No. 32-10. Around that same time, the Plaintiff received a letter from AIG dated May 5, 2016, which explained: "The medical facts provided for the specified medical condition support the definition of a serious health condition under the applicable federal and/or state regulations for the period from August 17, 2015 to August 20, 2015." Def. Ex. 4; *see* Def. Ex. 2 at 64:2–65:1.

Budreau checked internally and discovered that the Plaintiff did not have any approved FMLA leave available to cover his absence on May 12, 2016. Def. Ex. 10, at ¶¶ 7, 8; *see* Def. Ex. 2, at 67:25–68:19. Budreau spoke with the Plaintiff, and the Plaintiff informed her that an unidentified female with AIG told him he had approved FMLA leave during a phone call. Def. Ex. 2, at 66:16–67:18. The Plaintiff also informed Budreau that he had contacted Dr. Sanders'

office to request that they forward a copy of his FMLA certification. Def. Ex. 10, at ¶ 9. The

Plaintiff testified that he had spoken with a "Lisa," one of the nurses with Dr. Sanders' office, on

approximately May 15, 2016. Def. Ex. 2, at 69:9–20, 70:2–4. He testified that "Lisa" informed

him that if he needed Dr. Sanders to complete any FMLA paperwork, he would need to bring the

FMLA form to the office. *Id.* at 69:18–22, 70:7–12. The Plaintiff contends he took the FMLA

paperwork to Dr. Sanders' office the following day. *Id.* at 69:18–70:1, 70:25–71:7.

Budreau followed up with Dr. Sanders' office and was advised that they had no record of

the Plaintiff's request to forward FMLA documentation and that their phone records did not

reflect that the Plaintiff had called at all. Def. Ex. 10, at ¶¶ 10–12; *see* Def. Ex. 2, at 70:13–21,

71:8–16. Dr. Sanders' office told Budreau that the individual the Plaintiff had allegedly spoken

with was not working on the date in question because she did not work that day of the week. Def.

Ex. 10, at ¶ 13; *see* Def. Ex. 2, at 70:13–21, 71:8–16.

## G.    The Plaintiff's May 23, 2016 Suspension Pending Investigation

The Defendant's Director of Human Resources, Mike Savage, avers that the Plaintiff

represented to him that the Plaintiff he was certified for intermittent FMLA leave between

September 2015 and May 2016 and that an unnamed female employee of AIG informed the

Plaintiff of that certified leave; however, Savage later learned that the Plaintiff was not certified

for intermittent leave during that time and that AIG denied that an unnamed female employee

had informed the Plaintiff that he had certified leave for that period of time. Def. Ex. 1, at ¶¶ 7–

10, ECF No. 32-1. Savage was also aware that the Plaintiff represented that he had spoken with

Dr. Sanders' office regarding having his FMLA paperwork forwarded to AIG but that Dr.

Sanders' office had no record of such a communication. *Id*. at ¶¶ 11–12.

The Defendant's Plant Manager, Paul Hamill, decided to suspend the Plaintiff's employment pending an investigation based on the information he received from Savage and Budreau. Def. Ex. 11, at ¶ 4, ECF No. 32-11. Hamill sent the Plaintiff a letter on May 23, 2016, informing him of the basis for the discipline. *Id.* at ¶ 5; Def. Ex. 12, ECF No. 32-12; *see* Def. Ex. 2, at 75:2–7, 75:19–76:11. In the letter, Hamill explained: "In our attempt to resolve your concerns about your application for FMLA it appears that you have been deceitful regarding communicating time off as approved FMLA time, stating when you contacted your doctor's office and informing management of FMLA being approval [sic] by AIG." Def. Ex. 12, at 1. Listing the Plaintiff's "most recent reprimands" as the March 14, 2016 verbal warning for falsifying documentation, the April 14, 2016 written warning for falsifying documentation, and the May 2, 2016 final notice for the attendance violation, Hamill stated, "Your pattern of falsifying documents is certainly troubling and impacts your credibility." *Id.*

The letter describes the Plaintiff's recent behavior as violating the Defendant's policies against intentionally falsifying documents, misusing the company's leave benefits, and any other conduct that violates the company's standards for its employees. *Id.* Finally, the letter provides:

> Prior to making a final decision, we will fully review the facts related to this matter. You are advised and encouraged to present any information or facts that you feel we should consider in order for us to objectively assess this situation. If you want to present information for our consideration any such information must be provided in writing, to me, or to Mike Savage, Director, Human Resources, by not later than Wednesday, May 25, 2016. A final decision regarding your employment status will be made as soon as possible.

*Id.* at 1–2.

Between May 23, 2016, and May 26, 2016, the Plaintiff sent Savage paperwork he purported to be proof that he had certified FMLA leave available to him through May 31, 2018; the paperwork was the incomplete FMLA certification form related to his wife's vertigo, with his

8

August 31, 2015 signature. Def. Ex. 1, at ¶¶ 13–14, Ex. 1-A; Def. Ex. 2, at 72:8–21. Preprinted at the bottom of each page of the form is the wording: "Form Expires 5/31/18." Def. Ex. 6.

On May 26, 2016, Savage and the Plaintiff spoke regarding the investigation. Def. Ex. 1, at ¶ 15; Def. Ex. 2, at 78:10–16, 79:10–13. Savage informed the Plaintiff that he viewed the Plaintiff's submission of the incomplete FMLA certification as another example of dishonesty. Def. Ex. 1, at ¶ 16; Def. Ex. 2, at 79:3–9. Savage requested that the Plaintiff provide written documentation explaining why the Defendant should allow him to continue as an employee, but Savage never received a written response or any other evidence from the Plaintiff during his suspension. Def. Ex. 1, at ¶¶ 16–18. The Plaintiff did not tell Savage that he had filed a new claim for FMLA leave to cover his absence on May 12, 2016. *Id.* at 87:22–88:21. The Plaintiff testified that he was uncertain what documents were allegedly false. Def. Ex. 2, at 78:21–79:9.

## H.    The May 27, 2016 Termination of the Plaintiff's Employment for Dishonesty

The Plaintiff next heard from the Defendant when he received a letter in the mail from Hamill dated May 27, 2016. Def. Ex. 2, at 79:14–80:11; Def. Ex. 13, ECF No. 32-13. On that date, Hamill and Savage made the decision to terminate the Plaintiff's employment for falsification of records and misuse of the company's leave benefits. Def. Ex. 1, at ¶ 19; Def. Ex. 11, at ¶ 6. The letter confirmed that the Defendant terminated the Plaintiff's employment, effective May 27, 2016, for the reasons set forth in the May 23, 2016 letter of suspension pending investigation. Def. Ex. 13.

### ANALYSIS

The Defendant seeks summary judgment on the Plaintiff's remaining FMLA interference and retaliation claims. The Court grants the motion as to both claims.

A.    **FMLA Interference**

There appears to be no dispute that the Plaintiff received all requested FMLA leave for his wife's gallbladder surgery in August 2015. Rather, the Plaintiff's claim is that the Defendant interfered with his attempt to take intermittent FMLA leave related to his wife's vertigo. The FMLA makes it unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, a plaintiff must prove that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).

The Defendant first argues that the Plaintiff cannot show interference with FMLA benefits related to his wife's vertigo because the Plaintiff cannot produce any evidence that he was entitled to such FMLA leave. An employee is "entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the" listed reasons, including "[i]n order to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). For intermittent leave under the FMLA, including to care for a spouse with a serious health condition, "there must be a medical need for leave." 29 C.F.R. § 825.202(b). An employer may require "an employee's leave to care for the employee's covered family member with a serious health condition . . . be supported by a certification issued by the health care provider of the . . . employee's family member." *Id.* § 825.305(a); *see* 29 U.S.C. § 2613(a); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir. 2014) ("When an employee initially requests FMLA leave, the employer may take the employee at his word and

grant the request, or 'may request certification by the employee's healthcare provider.'" (quoting *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 886 (7th Cir. 2005))). The medical certification, "if required by the employer, addresses the medical necessity of intermittent leave." 29 C.F.R. § 825.202(b) (citing *id.* §§ 825.306, 825.310). "A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification." *Id.* § 825.305(c).

In this case, the Plaintiff learned of the Defendant's FMLA policy from paperwork at the facility where he worked, and the Defendant informed the Plaintiff that AIG was its third-party administrator for FMLA leave. The Defendant argues that the Plaintiff was aware of its FMLA policy and procedures because the Plaintiff followed them to obtain FMLA leave in August 2015 related to his wife's gallbladder surgery. The FMLA paperwork submitted for the leave related to his wife's surgery included the signed medical certification by his wife's healthcare provider. In contrast, the Plaintiff has offered no evidence that he submitted completed FMLA paperwork to the Defendant for intermittent leave related to his wife's vertigo. Although the Plaintiff obtained the assistance of his supervisor, Jennifer Lanie, in late August 2015 in filling out his portion of the new FMLA paperwork, the Plaintiff has offered no evidence that he completed the paperwork by obtaining and submitting the medical certification. Moreover, the Plaintiff testified that he did not remember if he ever submitted the FMLA certification related to his wife's vertigo. The only evidence identified by the Plaintiff is his testimony that he believed that FMLA certification was faxed to AIG in May 2016. For these reasons, the Plaintiff has failed to show that he was entitled to intermittent FMLA leave related to his wife's vertigo.

Second, the Defendant argues that it did not deny the Plaintiff FMLA benefits to which he was entitled because the Plaintiff has not produced any evidence that the six unexcused

absences on November 4, 6, and 16, 2015, January 15, 2016, and April 18 and 19, 2016, were eligible for intermittent FMLA leave. The Plaintiff did not keep records of his absences. When asked at his deposition what dates he requested FMLA leave, he testified only to a few requests in May 2016. It appears that the Plaintiff did not conduct discovery of his employment records from the Defendant during this litigation as the Plaintiff has failed to produce any evidence of attendance records. Moreover, the Plaintiff has not offered any evidence of his wife's medical records for treatment of vertigo on the dates of the unexcused absences or on any other dates. *See King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (finding that the Plaintiff's conclusory assertion that she met the minimum numbers of hours worked to be eligible for leave "falls far short of creating a triable issue of fact" on summary judgment).

In response, the Plaintiff argues that the Defendant interfered with his FMLA rights by refusing to allow him to review his attendance record in May 2016, such that he had no way to verify exactly which dates he believed were covered by FMLA leave. However, the May 2, 2016 Disciplinary Discussion Report, which he received, listed the dates of the six unexcused absences. And, as noted above, the Plaintiff did not request his attendance records from the Defendant during discovery in this litigation. The Plaintiff also argues that the Defendant was aware of the Plaintiff's belief that he had FMLA leave but did nothing to assist the Plaintiff in curing any alleged deficits in his leave request. The Plaintiff identifies no legal basis for any such duty. Moreover, the Plaintiff notes only that he met with Lanie sometime in August 2015 to discuss his need for intermittent FMLA leave and to fill out the paperwork. The paperwork required the Plaintiff to submit a medical certification, but the Plaintiff has offered no evidence that he did so. The Plaintiff has failed to create a genuine dispute of fact that he was denied any FMLA benefits to which he was entitled.

Although not argued in the Defendant's motion, the Plaintiff's response brief asserts that he provided sufficient notice of his intent to take intermittent FMLA leave. *See Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014) ("In order to make out an interference claim, Ms. Taylor-Novotny had to show that she made a request under the FMLA and that Health Alliance denied that request."). In support, the Plaintiff cites 29 C.F.R. § 825.303(b), which governs "employee notice requirements for unforeseeable FMLA leave" and provides: "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." In addition to the lack of evidence that the absences were unforeseeable, the Plaintiff has offered no evidence of what sufficient notice he gave the Defendant that leave for the six unexcused absences, or any other absences during that time period, was related to an FMLA-qualifying reason. *See Burnett*, 472 F.3d at 479 ("Although adequacy of notice is a fact-specific question, we have held that in the usual case, an employee's bare assertion that he is 'sick' is insufficient.").

The Plaintiff argues that a reasonable fact finder could infer that he contacted the Defendant on multiple occasions from September 2015 through May 2016 to request intermittent FMLA leave. The Court disagrees. The only evidence is the Plaintiff's general testimony about what he would have said in such a conversation and that he thinks he may have called a couple of times in May 2016 to request leave. Even when viewed in the light most favorable to the Plaintiff, this uncertainty is insufficient to permit an inference that the Plaintiff in fact requested FMLA during the relevant time period, especially not in relation to the six unexcused absences between November 2015 and April 2016. *See, e.g.*, *Bailey v. Pregis Innovative Packaging, Inc.*, 2009 WL 2970395, at *4 (N.D. Ind. Sept. 14, 2009) (finding that the plaintiff's "cloudy recall" at

her deposition that she "thinks maybe" she requested FMLA leave on two dates "contradict[ed] all of the evidence in the record" and was "too flimsy to create an issue of fact"); *see also Matthys v. Wabash Nat'l*, 799 F. Supp. 2d 891, 906 (N.D. Ind. 2011) (finding that the plaintiff's facts were "'too flimsy' to establish that she gave notice, let alone a sufficient probable basis, for FMLA-qualifying leave"). The Plaintiff has failed to create a genuine dispute of fact that he gave the Defendant sufficient notice of his intent to take intermittent FMLA leave. These arguments also do not satisfy the Plaintiff's burden on the two elements discussed above, namely his burden to demonstrate that he was entitled to FMLA leave and that he was denied FMLA benefits to which he was entitled.

In sum, other than showing that his supervisor knew in late August 2015 that he was filling out FMLA paperwork related to his wife's vertigo, the Plaintiff has offered no evidence that he obtained the necessary medical certification on the FMLA paperwork, that he submitted the completed FMLA paperwork to the Defendant, that any of the six unexcused absences in 2015 and 2016 were for leave related to his wife's vertigo, that he requested FMLA leave for any of those six unexcused absences or any other absences, that he gave the Defendant any notice of an intent to take intermittent FMLA leave prior to May 2016, or that the Defendant denied him leave to which he was entitled. Accordingly, the Court grants summary judgment in favor of the Defendant on the Plaintiff's FMLA interference claim.

**B.    FMLA Retaliation**

The FMLA makes it illegal for an employer to retaliate against an employee for taking FMLA leave. *See Freelain v. Village of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018) (citing 29 U.S.C. § 2615). To prove a retaliation claim, a plaintiff must establish that (1) he engaged in statutorily protected activity, (2) the employer took an adverse action against him, and (3) there

is a causal connection between the two. *Id.* at 901 (citing *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)). Unlike an FMLA interference claim, a retaliation claim "requires proof of discriminatory or retaliatory intent." *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)). "To succeed on a retaliation claim, the plaintiff does not need to prove that 'retaliation was the *only* reason for [his] termination; [he] may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Id.* at 995 (quoting *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008)). On summary judgment, the Court considers the evidence as a whole and asks whether a reasonable jury could draw an inference of retaliation. *King*, 872 F.3d at 842 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

The Defendant argues that the Plaintiff has offered no evidence that his protected activity caused his termination. In response, the Plaintiff first notes his personal belief that his use of FMLA leave led to his termination. However, the Plaintiff's subjective belief is insufficient to demonstrate causation. *See Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (finding that the plaintiff's "subjective beliefs" about the implications of the defendant's statements were insufficient to create a genuine issue of material fact). The Plaintiff then contends that a jury could infer intentional discrimination from circumstantial evidence, specifically arguing temporal proximity, disparate treatment, and shifting reasons for his termination. The Court considers each in turn.

First, the Plaintiff argues that a reasonable jury could conclude that the timing of the Defendant's actions shows an intent to retaliate against him for using FMLA leave. "'[S]uspicious timing alone rarely is sufficient to create a triable issue,' and on a motion for

15

summary judgment, 'mere temporal proximity is not enough to establish a genuine issue of material fact.'" *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018) (citation omitted). Instead, "a 'plaintiff must ordinarily present other evidence that the employer's explanation . . . was pretext for retaliation.'" *Id.* at 188–89 (citation omitted). Here, the Plaintiff cannot show temporal proximity or any other evidence of pretext.

As for suspicious timing, the Plaintiff notes that, from August 2008 until March 2016, he had only one documented incident of discipline, which was shortly after being hired in 2008. The Plaintiff contends that a reasonable jury could infer that he was a satisfactory employee for seven years until he took approved FMLA leave in August 2015 related to his wife's gallbladder surgery. He then contends that he applied for and requested intermittent FMLA leave on multiple occasions between September 2015 and May 2016. Although the evidence of record shows that the Plaintiff was granted FMLA leave related to his wife's gallbladder surgery in August 2015, the Plaintiff again has offered no evidence that he applied for and requested intermittent leave between September 2015 and May 2016 related to his wife's vertigo. The time between August 2015—when he took approved FMLA leave and when Lanie helped him begin to fill out a new FMLA leave request form—and the discipline on March 14, 2016, is too attenuated to create an inference of retaliation. *See Riley*, 909 F.3d at 189 (finding that a five-month time span, without more, was insufficient to establish a genuine issue of material fact to survive summary judgment).

The Plaintiff also reasons that, "in the early months of 2016, [the Plaintiff] was issued three relatively rapid fire disciplinary actions, seemingly at odds with his multiple years of satisfactory performance." Pl. Br. 14, ECF No. 35. As an initial matter, the Plaintiff does not dispute the validity of the events that led to his discipline on March 14 and April 14, 2016, for

providing incorrect information on documentation. And, both instances of discipline occurred *prior* to the last two unexcused absences on April 18 and 19, 2016. Once again, the Plaintiff has offered no evidence that he communicated to the Defendant that his four unexcused absences in November 2015 and January 2016 were for FMLA-related purposes, nor has he offered evidence that he requested any other excused absences for FMLA-related purposes during that time frame. It is the Plaintiff's burden to create a genuine issue of material fact, and he has failed to do so.

Second, the Plaintiff argues that a reasonable jury could conclude that similarly situated employees committed the same alleged errors but were not terminated. "To meet his burden of demonstrating that another employee is 'similarly situated,' a plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects." *Taylor-Novotny*, 772 F.3d at 492 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002)). Here, the Plaintiff offers only his vague deposition statement that Efron Rodriguez committed the same document error he made. Yet, the Plaintiff offers no argument or evidence to show how Rodriguez was similarly situated to him in all material respects or even that Rodriguez is outside his protected class. *See King*, 872 F.3d at 842 (finding that employees identified by the plaintiff were not comparators because she did not "attempt to show that they are similarly situated to her or even that they are outside her protected class" (citation omitted)). Although the Plaintiff identifies Rodriguez as another material handler, the Plaintiff offers no evidence regarding whether Rodriguez was disciplined for his error, whether the same decision-maker was involved, or even whether Rodriguez had ever sought FMLA leave. Thus, the Plaintiff cannot rely on Rodriguez as a comparator to support his FMLA retaliation claim.

Third, the Plaintiff argues pretext in Defendant's allegedly shifting reasons for its conduct leading to the termination of the Plaintiff's employment. *See Sandefur v. Dart*, 979 F.3d

1145, 1155 (7th Cir. 2020) (explaining that the issue of "pretext" is relevant when considering

the evidence as a whole under *Ortiz*). In assessing pretext, a court does "not evaluate whether the

stated reason 'was inaccurate or unfair, but whether the employer honestly believed the reason it

has offered to explain'" the adverse action. *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d

857, 864 (7th Cir. 2015) (citation omitted); *see also Castetter v. Dolgencorp, LLC*, 953 F.3d 994,

997 (7th Cir. 2020) ("The only concern in reviewing an employer's reasons for termination is the

honesty of the employer's beliefs." (citation omitted)). "A pretextual decision, then, 'involves

more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie,

specifically a phony reason for some action.'" *Harden*, 799 F.3d at 864 (citation omitted).

Here, the Plaintiff notes that, on May 2, 2016, the Defendant suspended the Plaintiff for

having six unexcused absences within six months, yet on May 27, 2016, the Plaintiff's

employment was terminated for falsifying documentation. The Plaintiff argues that he denies

having falsified documentation and that the termination letter does not mention attendance. From

these two facts, the Plaintiff reasons that a reasonable jury could conclude that the Defendant

was "fishing" for a reason to terminate the Plaintiff. This assertion is not supported by the

evidence. Although the Plaintiff testified that he did not intentionally falsify documentation, he

does not dispute that he included incorrect information on documents that led to both the March

and April 2016 disciplinary actions for falsifying documentation.

The Plaintiff also fails to acknowledge that the decisionmakers, Savage and Hamill,

based their decision on information uncovered *after* the Plaintiff was suspended for the

unexcused absences—information learned in the course investigating the Plaintiff's assertion that

he had received approval for intermittent FMLA leave. First, the Plaintiff represented to Savage

that he was certified for intermittent FMLA leave between September 2015 and May 2016 and

18

that an unnamed female employee of AIG informed the Plaintiff of that certified; however, Savage learned that both facts were not true. Second, Savage learned that the Plaintiff reported having spoken with Dr. Sanders' office about his FMLA paperwork but that Dr. Sanders' office had no record of the communication or any call from the Plaintiff. Hamill made the termination decision based on this information from Savage and Budreau as well as the Plaintiff's prior disciplinary record.

Whether Savage and Hamill were incorrect regarding the Plaintiff's conduct is not the test; rather, the question is whether they honestly believed that the Plaintiff had been dishonest in his communications with the Defendant. The Plaintiff has offered no evidence that Savage and Hamill did not honestly believe the stated reason for his termination, that the reason was insufficient or implausible, or that there were contradictions in the Defendant's reason such that a reasonable person would not believe the explanation. The Plaintiff has not shown pretext because he has not identified "such weaknesses, implausibilities, inconsistencies, or contradictions" in the Defendant's stated reason "that a reasonable person could find [it] unworthy of credence." *Id.* at 865 (quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012)).

Thus, the Plaintiff has failed to raise a genuine dispute of fact that his protected FMLA activity was a motivating factor in the decision to terminate his employment, and the Court grants summary judgment in favor of the Defendant on the Plaintiff's FMLA retaliation claim.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment [ECF No. 31]. The Court DIRECTS the Clerk of Court to enter judgment in

favor of the Defendant Drug Plastics and Glass Company, Inc. and against the Plaintiff Ervin

Shrock.

SO ORDERED on June 2, 2022.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT